**Hearing Date: TBD**
**Objection Deadline: TBD**

Lindsay M. Weber
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010

*Counsel for Harmon L. Fields*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Harmon L. Fields,<br><br>      Debtor. | Chapter 7<br>Case No. 05-15679 (REG) |

## NOTICE OF MOTION TO REOPEN CHAPTER 7 BANKRUPTCY CASE

PLEASE TAKE NOTICE THAT upon the accompanying motion, and all pleadings and proceedings heretofore had before this Court, Harmon L. Fields (the "Debtor"), by his undersigned counsel, will move before the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004 at a date and time to be scheduled by the Bankruptcy Court, pursuant to 11 U.S.C. §§ 105(a) and 350(b), Rule 5010 of the Federal Rules of Bankruptcy Procedure, and Rule 5010-1 of the Local Bankruptcy Rules for the Southern District of New York, for entry of an order (i) reopening the Debtor's chapter 7 bankruptcy case to allow for the Debtor to file an adversary proceeding to seek the discharge of his federal and private student loan debts; and (ii) staying any collection actions taken by the Debtor's student loan lenders pending the outcome of the reopened chapter 7 case (the "Motion").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must be made in writing, must conform to the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Southern District of New York, must set forth the name of the objecting party, the

basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) with a hard copy served upon (i) The Office of the Untied States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014; (ii) Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, New York, New York 10019, Attn: Alan Nisselson; and (iii) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010, Attn: Lindsay M. Weber, so as to be filed and received by not later than seven (7) days before the hearing date set by the Bankruptcy Court (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing on any date after the Objection Deadline.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the hearing, and failure to appear may result in relief being granted upon default.

Dated: August 25, 2016
New York, New York

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: */s/ Lindsay M. Weber*
Lindsay M. Weber
51 Madison Avenue, 22nd Floor
New York, New York 10010

*Counsel for Harmon L. Fields*

Lindsay M. Weber
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue
New York, New York 10010

*Counsel for Harmon L. Fields*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Harmon L. Fields,<br><br>　　　　　　Debtor. | Chapter 7<br>Case No. 05-15679 (REG) |

### MOTION TO REOPEN CHAPTER 7 BANKRUPTCY CASE

Harmon L. Fields (the "Debtor"), by and through his undersigned counsel, respectfully submits this motion (the "Motion") pursuant to 11 U.S.C. §§ 105(a) and 350(b) and Rule 5010 of the Federal Rules of Bankruptcy Procedure, and Rule 5010-1 of the Local Bankruptcy Rules for the Southern District of New York for entry of an order (i) reopening the Debtor's chapter 7 bankruptcy case to allow for the Debtor to file an adversary proceeding to seek the discharge of his federal and private student loan debts; and (ii) staying any collection actions taken by the Debtor's student loan lenders pending the outcome of the reopened chapter 7 case, and respectfully represents as follows:

### INTRODUCTION[1]

1.　　　The Debtor commenced the above-captioned bankruptcy case in July 2005. At the time, the Debtor had approximately $170,000 in student loan obligations. The Debtor did not seek

---

[1] A declaration of the Debtor under penalty of perjury attesting to the facts recited herein is filed concurrently with this Motion (hereinafter, the "Debtor Decl.").

1

to discharge his student loan debts at that time. Instead, the Debtor continued to make his minimum monthly payments in the hopes that his law degree would provide him with meaningful employment opportunities and wage growth.

2. Unfortunately over the past eleven years, the Debtor's financial condition has not improved. The Debtor is now seventy-three years old and currently employed as a document review attorney. Although the Debtor actively seeks out legal work, the job market is tight and document review projects are unpredictable. The Debtor currently earns net income of $3,200 per month, plus social security in the amount of $1,725 per month, for a total net monthly income of approximately $4,925. When the Debtor is not working, his only source of income is his social security, which does not even cover the cost of his rent and health insurance. The Debtor has been forced to collect unemployment on three separate occasions in the past three years and has only $6,000 in savings for retirement.

3. The Debtor currently owes $57,018.83 on his federal student loan and $99,492.55 on his private student loans, both of which are currently held by Access Group. The Debtor's monthly payment on his federal student loan is $195 and on his private student loans is $1,362, for a combined total of $1,557 per month. The Debtor's monthly living expenses (not including his monthly student loan payments) approximate $3,908. With an average monthly income of $4,925 and total expenses of $5,465, the Debtor is left on average with a $540 shortfall each month (which is significantly higher when the Debtor is out of work).

4. Since 2005, the Debtor has made every effort to stay current on his student loan obligations, including recently borrowing from friends and family. Until February of this year, the Debtor had made each of his monthly student loan payments on time and in full. By February, however, the Debtor's available income declined due to unemployment, a rise in medical costs

and unpredictability in the document review job market. No longer eligible for deferment or forbearance, it became increasingly more difficult for the Debtor to make ends meet. The Debtor continued payments on his student loans through May of this year. While some of those payments were late, they did not result in a default until August 2016.

5.      In an attempt to ease his financial burdens, in the fall of 2015 the Debtor contacted Access Group to see if it would be possible to adjust his monthly payments down to make more money available for his monthly living expenses. Access Group flat out rejected the Debtor's proposal and has since refused to negotiate any type of modified repayment plan with the Debtor.

6.      Since the Debtor received his chapter 7 discharge in December 2005, he has not taken on any additional secured or unsecured debt, nor has the Debtor acquired any new assets that would not otherwise be exempt under the Bankruptcy Code. The Debtor moves to reopen his chapter 7 bankruptcy case solely to enable him to file an adversary proceeding to determine the dischargeability of his student loan debt.

7.      To be clear, the Debtor is not seeking to unwind payments made to his student loan lenders over the course of the past eleven years. In good faith, the Debtor attempted to repay his student loans and is not trying to prejudice any creditor's reliance on prior proceedings or the passage of time. Accordingly, he seeks only to discharge his student loan obligations going forward, because he simply can no longer afford to pay them without undue hardship. If required, the Debtor could alternatively commence a new bankruptcy case, but given the relief sought is limited to one creditor that existed as of the time of commencing the prior case, the Debtor seeks to reopen.

8.      For the reasons set forth below, the Debtor respectfully requests that the Motion be granted.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this Motion pursuant to 11 U.S.C. § 350(b) and 28 U.S.C. §§ 157(a) and 1334(a)-(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

10. The Debtor graduated college in 1965. He worked in a variety of fields, including social work and education. In the hopes of a successful second career, the Debtor enrolled in Brooklyn Law School in September of 1999. He graduated in June 2002. After successfully passing the bar exam in July 2002, he obtained his New York State Bar license in February 2003. *See* Debtor Decl. ¶ 2.

11. Out of law school, the Debtor found employment at the law firm of Levy, Davis & Maher, LLP. *Id*. ¶ 7. By 2005, the Debtor was earning approximately $50,000 per year. *See* Docket No. 1 at Schedule I. At that time, monthly payments on his student loans totaled $624. *Id*. at Schedule J. The Debtor was also paying close to $2,000 a month in credit card debt. *Id*.

12. Struggling to stay afloat financially, the Debtor made the decision to file for chapter 7 bankruptcy relief. The Debtor filed his chapter 7 petition (the "Petition") in this Court on July 25, 2005. Docket No. 1. The Petition included on Schedule F two separate educational loans held by Kentucky Higher Education Student Loan Corporation in the amounts of $55,647.34 and $116,774.03. *Id*. at Schedule F.

13. The Debtor's scheduled claims on the Petition totaled $325,912.89, while his scheduled assets totaled $4,531.02. *Id*. at Summary of Schedules. On September 13, 2005, the chapter 7 trustee filed a report of no distribution. On December 2, 2005, the Debtor received a discharge (Docket No. 5) and the Debtor's case was automatically closed on December 6, 2005.

14. The Debtor did not seek to discharge his student loan debt in 2005. Debtor Decl. ¶ 6. He continued to make his monthly student loan payments, and remained current on those payments until February of 2016. *Id.* The present outstanding balance on the Debtor's federal student loan is $57,018.83 and on his private student loans is $99,492.55. *Id.* ¶ 5. Those loans are now held by Access Group and serviced by ACS. *Id.*

15. The Debtor lost his job at Levy, Davis & Maher, LLP in September of 2010. *Id.* ¶ 7. Following six months of unemployment, the Debtor found a job as a document review attorney in March 2011. *Id.* ¶ 8. The Debtor currently receives $28 per hour, but he is not permitted to work more than 40 hours per week. *Id.* Moreover, the Debtor's document review jobs are temporary positions, often unpredictable in length, and document review work is not always guaranteed. *Id.*

16. In June 2009, the Debtor started receiving $1,725 per month in social security benefits. *Id.* In the fall of 2015, the Debtor's monthly payments on his federal and private student loans increased to $195 per month and $1,362 per month, respectively. *Id.* ¶ 11.

17. The Debtor's sources of income for the past three years on a gross basis are as follows:

| Year | Social Security | Wages | Unemployment | Total |
| --- | --- | --- | --- | --- |
| 2014 | $25,038 | $62,352 | $810 | $88,200 |
| 2015 | $25,606 | $32,121 | $9,305 | $67,032 |
| 2016 (as of Aug. 1) | $12,809 | $21,500 | n/a | $34,309 |

*Id.* ¶ 9.

18. After taxes, the Debtor took home net approximately $67,503 in 2014, $51,838 in 2015, and $28,614 as of August 1, 2016. *Id.* ¶ 13. The Debtor projects that he will receive an additional $23,000 in wages and social security by end of this year, assuming there are no further gaps in his employment as a document review attorney. *Id.* ¶ 9.

5

19. The Debtor's total monthly expenses, including monthly payments on his student loan debts, is $5,465, broken down as follows:

| EXPENSE | AMOUNT |
|---|---|
| Rent | $1,588 |
| Property, homeowner's, or renter's insurance | $8 |
| Home maintenance, repair, and upkeep expenses | n/a |
| Homeowner's association or condominium dues | n/a |
| Electricity, heat, natural gas | $40 |
| Water, sewer, garbage collection | n/a |
| Telephone, cell phone, Internet, satellite, and cable | $122 |
| Food and housekeeping supplies | $800 |
| Childcare and children's education costs | n/a |
| Clothing, laundry, and dry cleaning | $50 |
| Personal care, products and services | $50 |
| Medical and dental expenses | $650 |
| Transportation (not including car payments) | $55 |
| Entertainment, clubs, recreation | $120 |
| Charitable contributions and religious donations | $40 |
| Life insurance | n/a |
| Health insurance | $385 |
| Vehicle insurance | n/a |
| Taxes (not deducted from pay) | n/a |
| Car payments | n/a |
| Alimony, maintenance and support payments | n/a |
| Other (Student Loans) | $1,557 |
| **TOTAL** | **$5,465** |

*Id.* ¶ 10.

20. In the fall of 2015, the Debtor contacted Access Group to ask whether it would be possible to adjust the amount of his monthly student loan repayments. *Id.* ¶ 11. Access Group said no. *Id.* Thereafter, the Debtor continued to contact Access Group on a monthly basis to inquire as to whether they could work out a payment plan to align with his income. *Id.* ¶ 12. Access Group continued to refuse to negotiate with the Debtor. *Id.*

## RELIEF REQUESTED

21. The Debtor seeks an order, pursuant to 11 U.S.C. §§ 105(a) and 350(b) and Rule 5010 of the Federal Rules of Bankruptcy Procedure, and Rule 5010-1 of the Local Bankruptcy

6

Rules for the Southern District of New York (i) reopening the Debtor's chapter 7 bankruptcy case to allow for the Debtor to file an adversary proceeding to seek the discharge of his federal and private student loan debts; and (ii) staying any collection actions taken by the Debtor's student loan lenders pending the outcome of the reopened chapter 7 case.

**BASIS FOR THE RELIEF REQUESTED**

**I.  The Equities Weigh in Favor of Reopening the Debtor's Bankruptcy Case**

22.   The Bankruptcy Code provides that a closed case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also* Fed. R. Bankr. P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code.").

23.   Whether to reopen a bankruptcy case is within the broad discretion of the Bankruptcy Court.[2] *Batsone v. Emmerling (In re Emmerling)*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997). "Although the statute does not provide any specific criteria to guide the determination of whether to reopen closed cases, courts typically examine the benefit to the debtor, the prejudice to

---

[2] The Debtor recognizes that there is a split in authority as to whether a chapter 7 case should be reopened to permit a debtor to file a complaint to determine the dischargeability of student loan debt after an order for discharge has been entered. *Compare In re Duval*, No. 10-10450 JMP, 2012 WL 1123041, at *1 (Bankr. S.D.N.Y. Apr. 3, 2012) (granting debtor's motion to reopen one-month old case for the purpose of filing an adversary complaint); *In re Crawley*, 460 B.R. 421, 434 (Bankr. E.D. Pa. 2011) (considering the debtor's post-closing circumstances in evaluating whether a student loan was dischargeable following the reopening of the debtor's four-year-old chapter 7 case); *In re Kelsey*, No. 00-01034, 2001 WL 34050740, at *1 (Bankr. D. Vt. Apr. 13, 2001) (granting debtor's motion to reopen six-year old case to determine the dischargeability of the debtor's student loan debt); *with In re Holly Michelle Coffee*, No. 07-12822-WHD, 2011 WL 3856996, at *1 (Bankr. N.D. Ga. Apr. 27, 2011) (denying debtor's motion to reopen to establish a hardship discharge three years after receiving a chapter 7 discharge); *In re Kapsin*, 265 B.R. 778 (Bankr. N.D. Ohio 2001) (finding that change in debtors' circumstances after chapter 7 case was closed, which allegedly bore upon question of "undue hardship," did not constitute "cause" for reopening the case roughly one-and-one-half years later). Here, the Debtor's financial condition has not changed in any material way since the filing of his 2005 Petition, nor has the Debtor acquired any new non-exempt assets. The Debtor therefore respectfully submits that an order reopening his prior chapter 7 proceeding is proper. If, however, the Court believes that the more appropriate course of action would be for the Debtor to proceed by filing a new case, the Debtor is prepared to file a petition.

7

the would-be defendant in the litigation, and the benefit to the creditors." *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 571 (S.D.N.Y. 2003).

24.    Courts may also consider additional equitable factors, such as the length of time the case was closed, whether relief can be afforded in an alternate forum, whether any parties would suffer prejudice, the extent of the benefit to the debtor by the reopening of the case, and whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion. *See In re Easley-Brooks*, 487 B.R. 400, 406-07 (Bankr. S.D.N.Y. 2013).

25.    Here, cause exists to reopen the Debtor's chapter 7 case. Although it has been eleven years since the Debtor's original filing, the reopening of the Debtor's chapter 7 case will not prejudice any party in interest. *See Merchant v. Lymon*, 828 F.Supp. 1048, 1063 (S.D.N.Y. 1993) ("[D]efendants must have suffered some amount of prejudice to successfully invoke laches, even if plaintiffs have a weak or no excuse for their delay."); *see also In re Stein*, 394 B.R. 13, 16 (Bankr. E.D.N.Y. 2008) ("The mere lapse of time does not constitute prejudice.").

26.    The Debtor is not seeking to recapture payments made on his student loan debts following the chapter 7 discharge he received in 2005. He is only looking to discharge the payments he has remaining on his student loan debts as he can no longer afford them without suffering an undue hardship. To the extent the Debtor's student loan creditors object to the Debtor's request for relief, they can appear and defend themselves on the merits in the Debtor's adversary proceeding.

27.    In contrast, the Debtor would clearly be prejudiced if he were not afforded an opportunity to seek the discharge of his student loan debts. Unlike many other types of debts, the Bankruptcy Code's exclusion of student loans from discharge is "self-executing" in the sense that, "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not

8

include a student loan debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004). Thus, the Debtor's obligations on his student loans will remain unless and until an express determination is made by the Bankruptcy Court that the loans are dischargeable. The Debtor should not be punished for making good faith efforts to pay off his student loan debts, rather than seeking their discharge at the time of his filing.

28. Finally, it is likely that the Debtor will obtain the underlying relief sought by this Motion if his case is reopened. Dischargeability of student loans is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a discharge under section 727 does not discharge an individual debtor from any debt for student loans, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents[.]"

29. A determination of undue hardship "requires a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents, if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the re-payment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).

30. Last year, the Debtor earned net approximately $51,800, $9,305 of which came from unemployment. This year, the Debtor is on track to earn net approximately $52,000 for the year (assuming his employment continues uninterrupted). As demonstrated in the chart above, the Debtor's regular living expenses (including payments on his student loan debt) are $5,465 per month, i.e., $65,580 per year leaving this year a deficit of $8,627. The Debtor simply cannot keep

9

up with his student loan payments and maintain a minimal standard of living if required to repay the full amount of his student loans.

31.  Further, "additional circumstances" exist in this case to satisfy the second prong of the *Brunner* test. Additional circumstances involve, among other factors, an examination into whether the debtor has maximized his income potential, has more lucrative job skills, has a limited number of years in his work life remaining, whether the debtor's age or other factors prevent retraining or relocation, and whether the debtor has other assets that can be used for repayment. *Nys v. Educational Credit Management Corp.*, 308 B.R. 436, 446-47 (9th Cir. BAP 2004) (listing factors). The Debtor is currently seventy-three years old. Due to his age the duration of his work life is limited, and as demonstrated above, the Debtor will have less income available on retirement than he has now. In addition, the Debtor has no assets which could be sold to pay his student loans. It is clear, as the Debtor approaches the final years of his career, that despite his best efforts at stable full-time employment, he will not be able to repay all of his debts.

32.  Finally, there can be no dispute that the Debtor has made good-faith and consistent efforts over the past eleven years to repay his loans. Up until recently, the Debtor had made every effort to pay his monthly loan obligations on time and in full. His past and present employment record shows that he is likely to continue to be employed at a rate of pay similar to what he currently makes for the foreseeable future, with annual cost-of-living *increasing* in light of his age and his income *decreasing* when he enters retirement.

**II.   The Bankruptcy Court Has the Authority to Stay Collection Efforts During the Pendency of the Reopened Proceeding**

33.  Although there is no automatic reinstatement of the automatic stay after the reopening of a closed bankruptcy case, section 105(a) provides the bankruptcy court with broad discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out

10

the provisions of this title." 11 U.S.C. § 105(a); *see also LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp. Reomar, Inc.)*, 93 B.R. 26, 29 (S.D.N.Y. 1988) (acknowledging bankruptcy court's authority to extend a stay under section 105, despite the inapplicability of the automatic stay provision under 11 U.S.C. § 362).

34.      It is well settled that the bankruptcy court's authority under section 105 is broader than the automatic stay provisions of section 362 of the Bankruptcy Code.[3] *See In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985). Although the bankruptcy court's equitable powers are not unlimited, courts do have the authority under section 105(a) of the Bankruptcy Code to issue stays in reopened proceedings to preserve the bankruptcy court's jurisdiction over issues of dischargeability. *In re Crocker*, 362 B.R. 49, 57 (1st Cir. BAP 2007) (finding "bankruptcy court had the authority under § 105(a) to stay the state court action and did so to preserve its jurisdiction over the dischargeability issues to be filed by Debtors in the adversary proceeding within the reopened bankruptcy case"); s*ee also In re Burke*, 198 B.R. 412, 416 (Bankr. S.D. Ga. 1996) (noting "11 U.S.C. § 105 empowers the court to enjoin collection efforts upon the reopening of a case").

35.      The Debtor therefore respectfully requests that in addition to reopening the Debtor's chapter 7 case the Bankruptcy Court stay any collection actions taken by the Debtor's student loan lenders during the pendency of his reopened chapter 7 proceeding.

---

[3]   Although section 105(a) cannot be used to "override explicit mandates of other sections of the Bankruptcy Code," *Law v. Siegel*, ⸺ U.S. ⸺, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014), no explicit provision of the Bankruptcy Code prohibits a bankruptcy court from staying a creditor's collection efforts upon the reopening of a chapter 7 case. *See id.* ("Section 105(a) confers authority to 'carry out' provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits."). Indeed, section 105(a) confers authority to "fill the gaps left by the statutory language," *In re Smart World Technologies, LLC*, 423 F.3d 166, 183 (2d Cir. 2005), and "exercise equity in carrying out the *provisions* of the Bankruptcy Code." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 91-92 (2d Cir. 2003) (emphasis in the original). Use of section 105 here will serve to protect the jurisdiction of this Court to determine the dischargeability of the Debtor's student loan debts pursuant to section 523(a)(8) of the Bankruptcy Code without the interference or distraction of intervening collection actions.

## REQUEST FOR REASSIGNMENT

36.    Local Bankruptcy Rule 5010-1 provides that a motion to reopen shall state the name of the judge to whom the case was assigned when it was closed, and that such motion shall be referred to the same judge, if such judge is still sitting.  If that Judge is no longer sitting, the motion shall be assigned in accordance with Local Bankruptcy Rule 1073-1.

37.    In this case, the Honorable Robert E. Gerber was the judge who presided over the Debtor's case at the time the case was closed.  Given that Judge Gerber is no longer sitting, the Debtor respectfully requests reassignment of this case so that the Motion can be heard.

## NOTICE

38.    In accordance with Local Bankruptcy Rule 9006-1, the Debtor has served a complete copy of this Motion on the United States Trustee, the chapter 7 trustee previously assigned to the Debtor's case, the Department of Education, Access Group, and ACS.  The Debtor will also serve the notice of hearing on all scheduled creditors and provide a complete copy of the Motion to any creditor who requests it after being served with the notice of hearing.  The Debtor submits that such notice constitutes good and sufficient notice of this Motion and that no other or further notice need be given (other than notice of the time, date, and location of a hearing on this Motion once scheduled by this Court).

## NO PREVIOUS REQUEST

39.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion, reopen the Debtor's chapter 7 bankruptcy case to allow for the Debtor to file an adversary proceeding to seek the discharge of his federal and private student loan debts and stay any further collection

12

actions taken by the Debtor's student loan lenders pending the outcome of the reopened case, pursuant to 11 U.S.C. §§ 105(a) and 350(b), Rule 5010 of the Federal Rules of Bankruptcy Procedure, and Rule 5010-1 of the Local Bankruptcy Rules for the Southern District of New York, and grant the Debtor such other and further relief as is just and proper.

Dated: August 25, 2016
      New York, New York

>  Respectfully submitted,
>
>  **QUINN EMANUEL URQUHART &
>     SULLIVAN, LLP**
>
>  By: */s/ Lindsay M. Weber*
>  Lindsay M. Weber
>  51 Madison Avenue, 22nd Floor
>  New York, New York 10010
>
>  *Counsel for Harmon L. Fields*

13